STATE, THE MAYOR, &c., OF THE CITY OF BAYONNE ET AL., PROSECUTORS, v. THE BOARD OF COMMISSIONERS OF APPEALS, &c., IN THE COUNTY OF HUDSON ET AL.

1. The board created by the act entitled "An act creating a county board of commissioners of appeal in cases of taxation, and for equalizing assessments for taxes in the county of Hudson," approved April 4th, 1873, (*Pamph. L., p.* 794,) is required to make an apportionment of state and county tax among the municipalities of that county. In so doing, the board have no power to consider or determine whether any part of the county tax required to be raised by order of the chosen freeholders is or is not properly included in the order. The power of the board is merely to apportion the amounts fixed by the state and county authorities.

2. An objection to an item included in the sum ordered to be raised by the chosen freeholders cannot be made upon a *certiorari* bringing up for review nothing but the apportionment made by the board.

3. The board has authority to equalize the valuations between the several assessment districts of the county, and to increase the valuations of specific pieces of property, and for those purposes to make investigations, &c. But their action in determining the valuations on which the apportionment is made will not be rendered invalid by refusal or neglect to alter valuations in the absence of proof produced of erroneous valuations, nor by refusal or neglect to investigate, at least, in the absence of proof produced of a *prima facie* case of error or of some reasonable ground to suspect error.

On *certiorari*.

Argued at November Term, 1883, before Justices KNAPP, DIXON and MAGIE.

For the prosecutors, *W. D. Edwards* and *C. W. Fuller.*

For the defendants, *Job H. Lippincott.*

The opinion of the court was delivered by

MAGIE, J.   This writ brings up a resolution of the county board of commissioners of appeal in cases of taxation and for equalizing assessments for taxes in the county of Hudson, adopted July 31st, 1882, and the apportionment of taxes made thereon by said board for the year 1882.

The prosecutors complain of the apportionment thereby made upon the city of Bayonne, for various reasons.

Objections may be made by a municipal corporation to an illegal apportionment of taxes upon the property within its limits, although the burden of the tax falls on the individual taxpayers. *Pierson* v. *Newark,* 15 *Vroom* 424; *Mayor, &c.,* v. *Freeholders,* 11 *Vroom* 595.

Prosecutors first object to the apportionment of county tax, whereby $37,710.77 was imposed on the city of Bayonne.   It is admitted that in making the apportionment of county tax, there was included in the whole sum apportioned $15,900, which was one year's interest on bonds amounting to $318,000, issued by the county of Hudson, under the authority of an act entitled "An act to authorize the boards of chosen freeholders of the respective counties of this state to issue bonds to raise money for state or county purposes, in anticipation of the arrearages of state or county taxation," approved March 18th, 1881.   *Pamph. L., p.* 132.   It is further admitted that these bonds were issued mainly to provide for arrearages occurring in the payments of taxes in Jersey City, where the general law, requiring payment of state and county taxes out of the first money collected, is not in force, but such taxes are

required to be paid only as collected. It further appears that at the date the bonds were issued the city of Bayonne had paid its state and county tax, and the bonds were not required to be issued by reason of any default on its part.

Upon these facts the city of Bayonne insists that no part of the interest upon these bonds can be imposed on property in its bounds. If this contention is available to prosecutors in this case, it involves the determination of the power of the legislature to pass the act of 1881, under which these bonds were issued, and the true construction to be given to the sec· tion which provides that the freeholders shall, each year, place in the tax levy for the county, so long as such bonds shall run, a sufficient sum to pay all interest on such bonds during the year, to be levied and raised in the same manner as other county taxes.

But these questions are not raised in this case. The writ brings here the resolution and apportionment of the board of commissioners of appeal, &c. The sole question is whether the board's action was within its powers, and legally taken.

The board of commissioners of appeal was created by an act approved April 4th, 1873. *Pamph. L., p.* 794. Authority was conferred on it to equalize the assessors' valuations of taxable property as between the several assessment districts in the county ; to increase or diminish valuations of particular pieces of property ; to hear and decide appeals from valuations so fixed ; to increase the assessed valuation of real and personal property, after notice to the person to be affected thereby.

With respect to apportionment, the board's power is fixed by the provisions of section 9, which declares that after they have heard and decided all appeals and finally corrected all values on the assessors' abstracts of ratables, " they shall make the apportionment of state and county tax " and return the books to the assessors, who shall proceed therewith.

By section 12, it is made the duty of the county collector to send to the board of commissioners of appeal, &c., in the month of July in each year, " the amount of money required to be raised by said county for state, state school and county pur-

poses." By the act incorporating the chosen freeholders in the respective counties, (*Rev.*, *p.* 127; § 12,) it is provided that when any of the corporations so created pass an order or grant for raising any sum or sums of money for any purpose specified in that or any other act, it shall be the duty of such corporation to direct the assessors of the respective townships to assess the same according to law. By the provisions of the "Act in relation to county expenditures," approved April 2d, 1878, (*Pamph. L.*, *p.* 248,) the chosen freeholders, in ordering the amount to be raised for county purposes, are required to fix certain classes of expenditure and determine the amount to be raised in each class; among the classes is one "for debt and interest."

From these provisions, it is plain that the board of commissioners of appeal, &c., had no authority to consider or determine whether the interest on the bonds in question should or should not be placed in the county tax levy for the year 1882. Whether such interest should be levied was to be determined by the chosen freeholders. The power of the board of commissioners of appeal, &c., was limited to a simple apportionment of the county tax fixed by the chosen freeholders, and of which they received notice. Their duty in this respect would be performed by a mere arithmetical computation, and if they have performed that duty in a legal way, prosecutors cannot object on this ground. The determination of the chosen freeholders cannot be thus attacked. It is not before us for adjudication.

The case shows that for the year in question the chosen freeholders directed $514,562.50 to be raised for county purposes, which included the interest in question. Notice was duly given to the board of commissioners of appeal, &c., who apportioned that sum among the various assessment districts of the county. It is not contended that it was not done with mathematical accuracy.

In this action the board of commissioners of appeal, &c., performed the duty required of them, and their action cannot thus be objected to.

In *Pierson* v. *Newark, supra,* the apportionment complained of was required to be made in a particular manner, varying with respect to different municipalities, and not being so made, it was adjudged erroneous on the objection of the municipality injured thereby. Here the injury, if any, inflicted on prosecutors is the result, not of any error of defendant, but either of the law itself or the determination of the chosen freeholders respecting the tax levy. If this be remediable it must be in some other mode.

Prosecutors further object to the valuations fixed by this board for the year 1882, upon two grounds:

The first relates to an alleged undervaluation of the taxable property in Jersey City. Since the board was created for the purpose (among other things) of equalizing the valuations as between the assessment districts of the county, proof of an undervaluation in one district would require their action. A *prima facie* case of such undervaluation would probably require them to investigate in the manner provided for in the act. But no such proof seems to have been placed before the board, nor was there a case made which, in my judgment, required investigation, or at least other investigation than was made. It appears that the assessors returned to this board in June, 1882, the valuation of the taxable property of Jersey City at $59,997,630. In October, 1882, the assessors returned to the city authorities the taxable property of the same city at $61,508,197, being a difference of about $1,500,000. The action of the board of commissioners of appeal, &c., in making the apportionment complained of was taken July 31st, 1882. On September 4th, 1882, representatives of the city of Bayonne appeared before the board and protested against the apportionment upon the ground, among others, that "in their opinion" the taxation of Jersey City was relatively lower than that of other parts of the county. No proof was produced in support of this opinion. It, however, appears that the attention of the board was called to the fact that in previous years discrepancies existed between the valuations of

property in Jersey City returned to this board and those returned to the city authorities.

But this protest was not made until after the action under review had been completed. The return of the valuations for 1882 had not yet been made to the city authorities of Jersey City. There was no proof, therefore, of undervaluation.

Nor do I think that the previous discrepancies necessarily required the board to reconsider its action and investigate the facts more fully than had been done. It appears that all the assessors had previously been examined under oath by the board. In the absence of proof that the discrepancies were intentional or fraudulent, I think the board was justified in adhering to the determination already arrived at.

It may be added that the assessors have in the affidavits taken explained the occurrence of these discrepancies on the ground that the return to the board is made in June and that to the city in October, and that in the meantime they discover and assess new property or increase the valuations of property already assessed by reason of improvements made.

No error is therefore established respecting this valuation on this ground.

The other ground relates to the valuation of certain specific pieces of property which were alleged to be undervalued or omitted. In such case the board may make a proper increase, but their action must be on notice to the parties to be affected. *State, Trask, pros.,* v. *Carrigan,* 8 *Vroom* 264; *State, Evans, pros.,* v. *Eckerson,* 8 *Vroom* 385; *State, Hoboken, &c., pros.,* v. *Anderson,* 9 *Vroom* 82.

But this objection was not made to the board until more than a month after the apportionment had been made. It was not based on proof of the value of the properties, or of the omission of property. The minutes show that it was based on mere "information and belief." If the board had a right to reconsider their previous action, I do not think that there was anything in an objection so made which required them so to do, or which would invalidate their apportionment for not so doing.

This objection cannot prevail.

The prosecutor's writ should therefore be dismissed, with costs.